438 So.2d 452 (1983)
Wallyce V. VANDERGRIFF, Appellant,
v.
Jack C. VANDERGRIFF, Appellee.
No. AQ-277.
District Court of Appeal of Florida, First District.
September 19, 1983.
Rehearing Denied October 21, 1983.
*453 John L. Myrick of Kinsey, Myrick & Troxel, P.A., Pensacola, for appellant.
David H. Levin and Richard E. Scherling, Pensacola, for appellee.
SHIVERS, Judge.
The issue in this dissolution action is whether the final judgment has made adequate and reasonable financial and property arrangements for the wife.
The specific questions on appeal relate to permanent alimony as opposed to rehabilitative alimony, and the sufficiency of it, the length of time for the wife's use of the marital home, the personal property award to the wife, provisions for the wife's health insurance, and the failure of the trial court to dispose of the parties' savings plan account. We affirm in part and reverse in part. We affirm the provisions as to the wife's use of the marital home and the personal property award to the wife. We reverse and remand the alimony award, the provisions for the wife's health insurance, and the failure to divide and dispose of the parties' Telco savings plan account.
The parties were married over 32 years. Although the wife received a degree in elementary education, her teaching certificate long ago lapsed. The wife has stayed home to raise the parties' three daughters and has not been gainfully employed for 26 years. Her activities outside the home have included teaching at church school, helping with Southern Bell functions, and family/community service as a leader in Brownie and Girl Scouts, a room mother, a teacher's helper, an unpaid volunteer teacher and lunchroom helper.
The husband has been employed 34 years with Southern Bell, is now an associate manager earning an annual gross salary of $36,000  $37,000 ($3,133.34 per month). The marital home is unencumbered. The husband owes $6,500 to his credit union.
The final judgment dissolving the marriage awards custody of the 15-year-old minor child to the wife, requires the husband to pay the wife $180 monthly for the child's support and to pay the child's Catholic high school tuition. The judgment orders the husband to pay the wife $300 per month rehabilitative alimony for a period of three *454 years, reserving the right to revise or extend the rehabilitative alimony.
Exclusive use of the marital home and personal property therein is awarded the wife until the child attains her majority or until the wife dies or remarries. The husband is required to pay taxes on the marital home and a lot owned by the parties, to make certain home repairs, but to receive credit for all these payments upon sale or disposition of these properties. (Although the record is not entirely clear, it is assumed the marital home is titled in both names.)
The wife makes a forceful argument for her continued use of the marital home and property therein following the child's reaching 18, but we affirm the trial court's discretion that the parties' ownership of the marital home and personal property therein as tenants in common shall cease being subject to the wife's exclusive use upon the child's majority or the wife's remarriage. We do this, confident that upon remand adequate support provisions will be made for the wife. We note, parenthetically, that husband is to receive credit for taxes and repairs paid by him. We assume this means that, upon sale or disposition, he will receive credit against the wife's share for half the taxes and repairs paid by him.
We turn now to the wife's point that she should have been awarded permanent alimony. She should have been. A husband who has been married over three decades to a wife whom he has supported, who has raised his three children, and who has no present ability to support herself, but whom he can support, should provide her permanent alimony. See Colucci v. Colucci, 392 So.2d 577 (Fla. 3d DCA 1980). Permanent alimony is used to provide the needs and necessities of life to a former spouse as they have been established by the marriage of the parties. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) at 1201. The standard of need for the award of alimony after a marriage of some duration is the standard of living enjoyed during its course. The trial court abused its discretion in awarding rehabilitative instead of permanent alimony and in making an inadequate award of only $300 per month. See De Cenzo v. De Cenzo, 433 So.2d 1316 (Fla. 3d DCA 1983). We reverse the rehabilitative alimony award with directions to award an adequate and increased amount of permanent periodic alimony sufficient for the wife's support and in accordance with the husband's ability to pay.
A part of the wife's needs is health care. Although the wife suffers from high blood pressure, allergies, and a back condition, the final judgment makes no provision for the wife's health care. The record indicates that upon dissolution the wife will no longer be a beneficiary on the husband's health, hospital and dental insurance policies. Upon remand this portion of the wife's needs should be specifically addressed and met.
Upon remand the trial court should also address the status and/or disposition of the Telco savings account.
REVERSED and REMANDED.
ROBERT P. SMITH, Jr., J., concurs and dissents, with opinion.
NIMMONS, J., specially concurs.
ROBERT P. SMITH, Jr., Judge, concurring and dissenting:
I agree with the court's opinion that the record as a whole indicates a shortchanging of the appellant wife and that the judgment should be reversed for its failure to make adequate provision for her. I also share the court's concern over the amount of alimony awarded, there being no explanation in the trial court's judgment of the facially inadequate award of $300 per month; and I join my colleagues in calling for reconsideration of the wife's health care needs and her claim to rights in the Telco savings account.
Yet I must respectfully disagree that, as a matter of law, the trial court must be held to have erred in awarding at this time rehabilitative alimony only, and in not awarding permanent alimony. The significant factor in this judgment, indicating the chancellor's purpose more than any other, is *455 his retention of jurisdiction "to revise or extend said rehabilitative alimony" within the three-year period in which those sums are to be paid. Within the context of prior decisions of this court, that provision represents a decision by the circuit court to motivate the college-trained and avocationally active wife to test and establish her financial dependence or independence, as the case may be, reserving her right to move later for extended rehabilitative or permanent alimony "upon a showing of diligent effort toward rehabilitation which through no fault of her own has been unsuccessful... ." Barker v. Barker, 384 So.2d 925, 926 (Fla. 1st DCA 1980). See also Roberson v. Roberson, 401 So.2d 873 (Fla. 1st DCA 1981); Quick v. Quick, 400 So.2d 1297 (Fla. 1st DCA 1981). There is a view of the record evidence that would indicate a rather cavalier attitude by the wife toward rehabilitating her powers of self-support. That view of the evidence, I take it, explains both the court's choice of rehabilitative alimony, which I regard as a wholly permissible choice, and the rather parsimonious award, which I agree needs further consideration.
Granted that there is some apparent warrant for an ironclad entitlement to permanent alimony in the Third District's decisions cited by my colleagues, I had not understood that this court was wed to the invariable proposition that 32 years of marriage yields to a 52-year-old wife an entitlement to permanent alimony regardless of what seems to be, in appellee's legitimate view of the record, her earning capacity and her determination not to exploit it.
Among the factors to be considered in determining the kind and amount of alimony to be paid is "[t]he contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education and career building of the other party." Sec. 61.08(2)(f), Fla. Stat. (1981). In appellee husband's legitimate view of the record, which need not be recounted here in detail, the appellant wife was anything but a model partner in this marriage. On this evidence the circuit judge might have found that the wife constantly nagged and belittled her husband, committed physical violence upon him, and pointed a rifle at him and pulled the trigger. The wife's mother, who lived with the family without the husband's approval, contributed and still contributes financially to maintaining the home, so lessening the wife's financial dependency even now. That the circuit judge was perhaps overpersuaded by this evidence, so shortchanging the wife, is not in my opinion cause for this court to try the case anew and award permanent alimony as though this were simply a textbook case involving a 32-year marriage, grown or nearly-grown children, and a 52 year-old wife. My colleagues seem to have discounted entirely the very factors, appropriately considered under the statute, which most influenced the circuit judge.
In these difficult cases, the financial decisions are complex and indivisible. The choice of appropriate provisions invokes the circuit court's most sensitive and dispassionate powers of judgment. The appropriate choices of remedies vary with the circumstances. "Only our duty remains constant, which is to conceive of the alternatives as the chancellor did, if possible, and to affirm if the prescribed course of action is within the range of lawful choices under all the circumstances." Quick, supra, 400 So.2d at 1299. Since in principle the choice of rehabilitative rather than permanent alimony was at this time a permissible one, in my view, I would sustain that choice and remand the case for further consideration of the amount of alimony and the other issues.
NIMMONS, Judge, specially concurring.
I concur in Judge Shivers' opinion. In Judge Smith's concurring and dissenting opinion, he posits a view of the evidence which he suggests would support the trial court's denial of permanent alimony. Had the trial court actually made the kinds of factual findings which such view of the evidence assumes, then I would be inclined to agree that the denial of permanent alimony would not be error. Short of such findings, however, I am of the view that *456 the wife was entitled to an award of permanent alimony.